UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
A.D., a minor, by his parents, K.D. and G.D.,

                                  Plaintiff,

       -against-

SOUTH HUNTINGTON UNION FREE
SCHOOL DISTRICT and the BOARD OF
EDUCATION, SOUTH HUNTINGTON UNION
FREE SCHOOL DISTRICT.

                               Defendants.
------------------------------------------------------------------X

Civil Action No.

# **COMPLAINT**

## INTRODUCTION

1. This action arises out of the refusal of the Defendants ("the District" collectively) to honor both the letter and the spirit of the McKinney-Vento Education of Homeless Children and Youth Assistance Act ("McKinney-Vento" or "the Act") in blocking A.D. from attending its schools and enjoying the benefits of residency in the District following a catastrophic fire in their home.

2. As their home was uninhabitable and remains under construction, the family remains displaced. A.D. and his family have sought to reason with employees of the District and to advocate for themselves as best as possible on their own, but have been met with roadblocks at every turn.

3. The District has essentially suggested that A.D. is not homeless because he does not live in a homeless shelter or doubled up with family members. A.D. and his family have been fortunate to have homeowner's insurance that has paid for their temporary housing during this period of crisis. At no time has A.D. or his family expressed any interest in residing outside

the District, however, and will resume physical residency there as soon as construction has been completed.

    4.     As such, Plaintiff seeks an Order from this Court immediately enforcing the provisions of McKinney-Vento and returning him to his status as a resident of the District.

## FACTUAL BACKGROUND

    5.     A.D. is an 11-year-old student. He is homeless.

    6.     Prior to becoming (and at the time he became) homeless, A.D. was a resident of the District entitled to all of the benefits of a free public education provided by the District.

    7.     Beginning on June 7, 2021, following a catastrophic fire at their home, A.D. lived with his family at Melville Marriott for three nights and the Hilton Long Island-Huntington for 92 nights. The hotel costs were paid for by their insurance company.

    8.     Though neither the Melville Marriott nor the Hilton Long Island – Huntington are located within the boundaries of the District, the District accepted that the family's living arrangements were temporary and continued to consider A.D. as a resident of the District pursuant to McKinney-Vento.

    9.     Due to the cost to the insurance company of the hotels and the lack of suitable rental housing available on Long Island, from September 2021 to the present, A.D. has lived temporarily in the Garden City school district, in a rented condominium.

    10.    The lease for the condominium is paid for by the insurance company, while the family continues to pay the mortgage on their home. As such, the condominium is considered temporary and transitional housing.

    11.    The family home is still under construction at this time and has no certificate of occupancy. Construction is not expected to be finished before the beginning of the 2023-2024 school year.

12. A.D.'s parents, K.D. and G.D., intend to reside in their home in the District again when the home is safe to occupy so as to provide their child with as much continuity and stability in his education as possible, as they believe this to be in their child's best interest.

13. From the time of the fire to the end of the 2020-2021 school year, Defendants recognized A.D. as (1) homeless and (2) thus eligible to continue his education in the District with transportation provided pursuant to McKinney-Vento. Due to his special education needs, A.D. attended a private school within the geographical boundaries of the District and received transportation services from the District.

14. For the 2021-2022 school year A.D. attended the same private school and the District continued to approve and financially contribute to A.D.'s 504 plan pursuant to a signed Agreement. The District only paid for A.D.'s transportation and school books because the family appealed the District's claims to the New York State Commissioner of Education, an appeal which was denied because the Parents misunderstood the process and were unrepresented. While the appeal was pending, the District even refused to allow A.D. and his parents to visit the District's 6th Grade Center because of their ongoing residency dispute.

15. For the 2022-2023 school year, A.D. attended the same school outside of the district but the District continued to approve and financially contribute to A.D.'s 504 plan pursuant to a signed Agreement. The District again refused to pay for A.D.'s transportation or school books, as did the Garden City Schools, because the private school was more than 15 miles outside of Garden City and the transportation and books were the responsibility of the District.

16. The school A.D. attended outside of the district is no longer available to him. Moreover, A.D. desires to return to his school district of origin, and his parents believe returning A.D. to his school district of origin is in A.D.'s best interest.

17. McKinney-Vento mandates that a youth who is homeless is, for the duration of the homelessness and in accordance with his best interest, entitled to attend school in the district in which the youth was enrolled when last permanently housed. *See* 42 U.S.C. § 11432(g)(3)(B). That is, in this case, a school within the District.

18. From at least September 2, 2021 and through to the present. Defendant has refused to enroll A.D. in its schools or treat A.D. as a resident of the District, even though A.D. has remained homeless throughout this time and it is the district of origin.

19. Rather than enroll A.D., Defendant has, based only on the claim that A.D.'s family's temporary residence makes them residents of the Garden City School District, asserts that it has no obligations to A.D. under the McKinney-Vento Act.

20. As a result, the District has refused to enroll A.D. pending the resolution of the Parties' dispute concerning his enrollment in his school of origin, in contravention of McKinney-Vento's express pendency requirement. *See* § 11432(g)(3)(E)(i).

21. As a result of the District's conduct, A.D., who has special educational needs, is at risk of losing not only access to an education for an indefinite period, but access to an education delivered by the only Local Education Agency that is familiar with his special educational needs and is thus uniquely able to provide him with a free, appropriate public education upon his enrollment.

22. Upon information and belief, at no point has the District conducted a "best interest" determination regarding A.D.'s enrollment. McKinney-Vento defines "best interest" as requiring a child to continue, if feasible, in his school of origin unless his family disagrees with this placement. *See* § 11432(g)(3)(A). Local Education Agencies -- like The District -- are required to make a best interest determination when deciding whether to enroll a child. *See* § 11432(g)(3)(B).

23. Plaintiff A.D. now seeks the Court's intervention so that he may immediately re-enroll in the District, his school of origin and his family's school of choice, pursuant to McKinney-Vento's pendency requirement. *See* § 11432(g)(3)(E).

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action under 42 U.S.C. §§ 11431-11435, the McKinney-Vento Education of Homeless Children and Youth Assistance Act.

25. Venue properly lies in this District under 28 U.S.C. §1391(b)(l) and (2).

## PARTIES

26. Plaintiff and his family are domiciled in Suffolk County, but temporarily reside in transitional housing in Nassau County until their home can be rendered safe for habitation following a catastrophic fire.

27. Defendant District is a local educational agency as defined in 42 U.S.C. §11432. As such, it is subject to all requirements of McKinney-Vento.

## FIRST CAUSE OF ACTION

28. Defendant is a local educational agency as defined in 42 U.S.C. §11432.

29. Defendant denies that A.D. qualifies as homeless under McKinney-Vento because the transitional housing they were able to locate is a "nice" condominium in Garden City.

30. As such, and even before A.D. and his family moved into that condominium, Defendant has failed to follow multiple requirements of McKinney-Vento as applied to Plaintiff.

31. Most importantly, the District has failed to maintain A.D. in his District of origin, which is presumed to be in his best interest under McKinney-Vento, §1143(g)(B)(i) and (ii):

> In determining the best interest of the child or youth under subparagraph (A), the local educational agency shall—
>
> (i) presume that keeping the child or youth in the school of origin is in the child's or youth's best interest, except when doing so is contrary to the

> request of the child's or youth's parent or guardian, or (in the case of an unaccompanied youth) the youth;
>
> (ii) consider student-centered factors related to the child's or youth's best interest, including factors related to the impact of mobility on achievement, education, health, and safety of homeless children and youth, giving priority to the request of the child's or youth's parent or guardian or (in the case of an unaccompanied youth) the youth.

32. The District has also failed to follow the procedural requirements of McKinney-Vento as to A.D. For example, under §11432(e)(3)(c)(i), entitled "School requirements," the District has failed to provide written notice, at the time A.D. sought enrollment in the District, and at least twice annually while he was enrolled in such school, to A.D.'s parent or guardian that was (i) signed by the parent or guardian; (ii) set forth the general rights provided under this part; (iii) specifically stated that the choice of schools A.D. was eligible to attend, as provided in subsection (g)(3)(A); that no homeless child or youth is required to attend a separate school for homeless children or youths; that homeless children and youths shall be provided comparable services described in subsection (g)(4), including transportation services, educational services, and meals through school meals programs; and that homeless children and youths should not be stigmatized by school personnel; and (iv) provided contact information for the local liaison for homeless children and youths and the State Coordinator for Education of Homeless Children and Youths. Furthermore, no residency hearing was ever held by the District.

33. In fact, despite multiple attempts by A.D.'s parents to engage in constructive discussions with the individual allegedly assigned as the District's Coordinator for Homeless Children, they were met with stonewalling and near silence.

34. Indeed, the District fought A.D.'s attempts to enroll in the District in the school year following the fire through every means at its disposal, completely disregarding the requirements of §11432(e)(3)(c)(ii) to "provide assistance to the parent or guardian of each homeless child or youth … to exercise the right to attend the parent's or guardian's (or youth's) choice of schools, as provided in subsection (g)(3)(A).

35. At no time, including in any telephone call, meeting or written communication with A.D. 's parents did any District administrator, school official or employee state that A.D.'s temporary housing needed to be within the district prior to A.D. 's parents finding transitional housing.

36. The District even denied A.D.'s request for transportation, transportation to which he was entitled as a resident of the District as well as under McKinney-Vento (g)(1)(J)(iii)(II): "If the child's or youth's living arrangements in the area served by the local educational agency of origin terminate and the child or youth, though continuing the child's or youth's education in the school of origin, begins living in an area served by another local educational agency, the local educational agency of origin and the local educational agency in which the child or youth is living shall agree upon a method to apportion the responsibility and costs for providing the child or youth with transportation to and from the school of origin. If the local educational agencies are unable to agree upon such method, the responsibility and costs for transportation shall be shared equally."

37. By failing to adhere to the requirements of McKinney-Vento, Defendant has deprived Plaintiff of his rights under federal law to a free public education.

## SECOND CAUSE OF ACTION

(For violation of the Due Process Clause of the United States
Constitution, actionable under 42 U.S.C. §1983)

38. Defendant violated and continues to violate Plaintiff's rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to hold hearings legally required by McKinney-Vento, actionable under 42 U.S.C. §1983.

## CONCLUSION

WHEREFORE, Plaintiff requests that the Court:

a. Adjudge and declare that the policies, practices, omissions and conditions described above are in violation of Plaintiff's rights under the McKinney-Vento Act and the Due Process Clause of the United States Constitution;

b. Enjoin Defendant, its successors, agents, servants, employees, and all those in active concert or participation with Defendant from violating Plaintiff's rights under McKinney-Vento while he remains homeless.

c. Compel Defendant to enroll Plaintiff in the District and to comply with all requirements of McKinney-Vento.

d. Award Plaintiff reasonable attorney's fees, including litigation expenses and costs under 42 U.S.C. §1988.

e. Grant and award such other and further relief as this Court deems just and proper.

Dated: July 28, 2023

        Respectfully submitted,

        Brill Legal Group, P.C.
*Counsel for Plaintiff*

By: _____
Peter E. Brill
64 Hilton Avenue
Hempstead, NY 11550
(516) 206-2002